Parsons, C. J.
This prosecution was commenced before a justice of the peace against the defendant, upon the statute of *406 1791, c. 58, and on the additional statute of 1796, c. 88, to recover a penalty therein provided.
By the first statute, it is enacted that no person shall travel, or shall, upon land or water, do any manner of labor, business, or work, on the Lord’s day, (works of necessity and charity excepted,) on a penalty not exceeding twenty shillings, nor less than ten shillings, for every offence; and that the Lord’s day shall extend from the midnight preceding to the sun-setting of that day.
By the additional statute, these penalties are raised so as not to be more than six dollars sixty-six cents, nor less than four dollars; and one moiety is given to the town in which the offence is committed, and the other to the informer, who may recover the same with costs before a justice; or the penalties may be recovered for the use of the town by presentment at the Sessions, whose jurisdiction has been since transferred to the Common Pleas.
The defendant, to support his motion, contends that the complaint is insufficient for the commonwealth to have judgment.
If the statute had authorized a proceeding by information in any court of record for the recovery of the penalty, and the information had been drawn like this complaint, it is very [ * 465 ] * clear that such information would have been bad, because there is no allegation of the sum of money forfeited, nor of the share which the informer claims. For an information resembles, not only an indictment in the correct and technical description of the offence, but also an action qui tam, in which the informer must show the forfeiture and its appropriation, or, at least, the proportion given him by the statute. (1)
But the remedy pursued in this case is a summary proceeding before a justice, in which the Court will see that the fact charged is strictly within the statute, and that the proceedings are conformable to it. But a rigid adherence to forms will not be required. (2)
The substantial part of the complaint is the description of the of-fence. And the complaint charges that the defendant did, &c. [Here his honor recited the complaint as before inserted.] This we consider as a sufficient description of an offence against the first section of the first statute, although there are words of surplusage, which had been better omitted ; but they do not render the charge uncertain or incomplete.
There are several objections made to the form of the complaint.
There is no conclusion against the form of the statutes in such case provided. The conclusion is “ against the statutes enacted for the due observation of the Lord’s day.” Upon examining the *407 titles of the several statutes, we are satisfied that the conclusion in the complaint, though not technically formal, is sufficiently certain, as the defendant must as certainly know the offence with which he is charged, and the statutes he is alleged to have broken, as if the conclusion had been in the usual form.
Another exception is, that the complaint does not set forth on what part of the Lord’s day the work or labor was done. It appears that the statute has defined the time which is intended to be considered as the Lord’s day. It is, therefore, regular to allege the fact on the Lord’s day generally; and if, by the testimony, it was proved to have been done at any * time not [ * 466 j therein considered as the Lord’s day, the defendant must have been acquitted.
The exception which has the most weight is, that the complaint neither shows on whose behalf he complains, nor what the defendant has forfeited by the offence, nor, consequently, how the statute has appropriated the forfeiture.
To an information qui tarn at common law, this exception would be fatal. But some indulgence is due to these summary proceedings. In looking into the entries, the precedents of convictions are found liable to the same exception. There are four in Tremayne’s Pleas of the Crown, p. 326—329, and some in Wentworth’s System of Pleading, vol. vi. p. 14—19. There is a form equally exceptionable in 1 Burr. 148, Rex vs. Jarvis, and another in the same book, p. 609, Rex vs. Little. The former was on the game laws, and the latter on the statute against hawkers and pedlers. Both were removed by the defendants, and in neither was this exception taken. For if the offence be correctly described by an informer, the justice, or, on appeal, the Sessions, and now the Common Pleas, is competent to decide an inference purely legal, as what is the for feiture incurred, and what is_ its appropriation. Upon the authority of these precedents, it is our opinion that the judgment ought not to be arrested for this exception.
But the defendant, as a further ground for his motion, has argued that this Court has no appellate jurisdiction of this cause. And if it has not, certainly we ought not to render judgment on this verdict, but should order the appeal to be dismissed.
The determination of this question must depend on the several statutes relating to this subject. The jurisdiction which the Common Pleas has of this cause, was vested in that court by the statute of 1803, c. 154. By the third section of this act, the Common Pleas are to exercise and perform all the powers, authorities, and duties, of the Court of Sessions, with certain exceptions which do not include its criminal jurisdiction. And although, in this statute, no *408 appeal is given from the sentence of the Common Pleas in criminal suits, yet, by a fair construction, that court must hold the original and appellate criminal jurisdiction of the Sessions under [ * 467 ] the same * modifications and limitations, with which it was exercised by the Sessions; and if, in this case, had the sentence been given by the Sessions, we should have sustained the appeal, the present appeal from the sentence of the Common Pleas ought to be sustained. And as the statutes of the commonwealth, erecting courts and defining their jurisdiction, are a revision of the provincial acts enacted for the same purposes, it may be useful to take a view of the ancient statutes.
By the provincial statute of 11 Will. 3, c. 1, the Court of Session was erected, its jurisdiction defined, and an appeal given to the Superior Court, then the supreme judicial court of the province, from any sentence in a matter originally heard and tried in the Sessions. And an appellate jurisdiction from the sentence of a justice of the peace is also given to the Sessions, in which court the order or sentence was to be final. These provisions were continued in force until after the ratification of our constitution, and until their subsequent revision ; the style of the courts being changed on the declaration of independence, as they were no longer the courts of the king of Great Britain. It is therefore very clear that such was the policy of the law, that neither this Court, nor its predecessor, the Superior Court, possessed any appellate jurisdiction over the Sessions, except in matters there originally heard and tried, for a period of more than eighty years.
By examining the statutes now in force respecting these subjects, it appears that this Court was erected by the statute of 1782, c. 9, which gives to this Court jurisdiction of all suits, civil and criminal, regularly brought before it by appeal or otherwise.
By the 14th chapter of the same statute, the Sessions was erected, with power to hear and determine all matters relative to the conservation of the peace, and the punishment of such offences as are cognizable by it at the common law, or by acts of the legislature. By this act, original jurisdiction, in criminal matter», is given to it, but not any power to correct the proceedings of justices by receiving appeals from their sentences; its appellate and its civil jurisdiction being derived from other statutes. And the third section, giving this Court appellate jurisdiction from its sentences [*468 ] in criminal * matters, must necessarily be confined to cases of which that court was, by the first section, vested with jurisdiction.
An appellate jurisdiction from the sentence of a justice was not given to the Sessions by any act passed after the revolution, until *409 the 15th of March, 1784, when the statute of 1783, c. 51, was passed, about two years after the erection of the Sessions. This Court of Sessions, before the passing of this last act, in fact exercised appellate jurisdiction from the sentences of justices; and also a variety of civil jurisdictions, by virtue of provincial acts then in force, its civil jurisdiction embraced highways and other matters. Its appellate jurisdiction, from the sentences of justices in criminal matters, was founded on the fifth section of the provincial act of 11 Will. 3, c. 1, which section was not revised or repealed until March, 1784. And the appellate jurisdiction derived to the Sessions from that section, was, by the express terms of it, to be final.
We are,-therefore, satisfied that this Court had no appellate jurisdiction from the sentences of the Sessions in criminal matters, not originally heard and tried in that court before the statute of 1783, c. 51. And, in our opinion, this last statute does not give us this jurisdiction. The third section gives the Sessions an appellate jurisdiction from the sentence of a justice in criminal matters, and regulates the manner in which this jurisdiction may be exercised, when the appellant shall endeavor to defeat it by refusing to enter or prosecute his appeal. And it is true that there is no provision, as in the provincial statute of 11 Will. 3, c. 1, that the judgment of the Sessions shall be final.
Hence it has been argued that the Sessions now had appellate jurisdiction in this case, not by that provincial statute, but by the statute of 1783 ; that this statute does not direct that this jurisdiction shall be final; and as, in the statute erecting the Sessions, an appeal is given from all sentences, therefore an appeal, in this case, now lies from the Common Pleas, the substitute for the Sessions.
As an appeal is given in all cases within the original jurisdiction of the Sessions, we will allow that, if new cases are added to its original jurisdiction, an appeal will lie in such new cases; and if an appeal had been given in all cases within the * appellate jurisdiction of the Sessions, and afterwards [*4-69] its appellate jurisdiction is extended to new cases, an appeal will lie in those new cases, because it would be a reasonable presumption that the legislature did not intend that its jurisdiction should in any case be final.
But we are satisfied that, where the appellate jurisdiction is final, if it should be afterwards extended to new cases, of these cases also will its jurisdiction be final, unless a different provision be made by law, notwithstanding its original jurisdiction may not be final; and a fortiori when a revising statute shall give it an appellate jurisdiction of the same causes, of which, by a former statute, it had final appellate jurisdiction. And this distinction results from the *410 manifest intent of the legislature, that the exercise of its original jurisdiction may be controlled on appeal; but that the exercise of its jurisdiction in correcting the errors of inferior magistrates should be final. We do not, therefore, admit the conclusion from the argument, because, when the last statute was made, all the appellate jurisdiction of the Sessions was then final.
As a further reason, we observe that any jurisdiction vested in any court must be presumed to be uncontrollable by appeal, unless the presumption is repelled by some legal provision ; for a right to appeal is a privilege granted to an aggrieved party, which does not involve in it a right further to appeal from the court to which he has applied for relief from an inferior jurisdiction.
It has been further argued that the legislature, in giving the Common Pleas appellate jurisdiction from the judgment of a justice in civil actions, expressly provides that no further appeal shah lie; (3) but as no such provision is subjoined to the act giving appellate jurisdiction to the Sessions, that in the last case the legislature intended to give an appeal after an appeal.
What effect different expressions, in two statutes, on new subjects, would have, cannot be generally determined, as it must depend on the nature of the expressions and of the subjects of the statutes. But, in comparing our revised statutes [*470] *with the provincial acts which were the objects of revision, it is manifest that they proceeded from different pens. In some, a precision of language is introduced, not in the former acts, to prevent doubts which never existed in practice, and this has created doubts in other statutes destitute of such precision. To illustrate this observation, a case may be mentioned, which has been decided in this Court. The provincial statutes granted to executors and administrators a right to prosecute or defend any personal action, where the testator or intestate died pending the suit. In practice, this right was confined to actions in which the causes of action survived, and there were no doubts. The revising statutes expressly limited this right to personal actions, in which the causes of action survived. Afterwards was passed the statute of 1788, c. 47, which authorized executors and administrators to prosecute or defend a review of any personal action (without expressing any limitation) if the testator or intestate died pending the writ of review. And in the case of Thayer, plaintiff in review and original defendant, vs. Bond, administrator of Dudley, (4) in which Dudley had recovered judgment in an action for a tort, and died pending the review, the original defendant insisted that by this statute he *411 could compel the administrator to enter the lists, and again try the cause of his intestate. But the Court, confining by construction the provision to personal actions, the causes of which survived, abated the writ of review.
In the present case, it may be remarked, that the statute of 9 Will. 3, c. 2, which gave justices civil jurisdiction in matters of small value, gave an appeal to the next inferior court, where the cause was to receive a final determination. An appellate jurisdic tian from a justice of the peace, in civil actions, is also recognized by the statute of 11 Will. 3, c. 2. Two years afterwards, the statute of 13 Will. 3, c. 15, was passed, which gave an appellate jurisdiction to the superior court from all judgments of the inferior court, without making any exception whatever. Thus, by the letter of this last statute, an appeal lay to the superior court in actions of which the * inferior court had appellate [*471] jurisdiction. But in practice, no appeal in such actions was allowed from the inferior court; and there was, in fact, no doubt about the construction. But in the revised statute, by an unnecessary precision, the appeal after an appeal was expressly prohibited. This prohibition was unnecessary, and introduced ex majori cautela; and no inference ought to be made to affect the construction of the statute of 1783, c. 51.
Upon the whole, it is our opinion, that by a reasonable construction of the several statutes, provincial and republican, relating to this subject, this Court has no appellate jurisdiction of this cause. This opinion does not overturn any existing practice, for this is the first attempt, that is recollected, to defeat the appellate jurisdiction formerly vested in the Sessions, and now in the Common Pleas, by claiming a further appeal to this Court. And it gives us much satisfaction that, by this construction, the present appellate jurisdiction of this Court appears to be consonant to ancient usage, to a fair exposition of the acts of the legislature, and to principles of sound legal policy.

Appeal dismissed.

Note. — After the opinion of the Court was delivered, the Chief Justice observed to the Attorney-General that, the judgment of the court below being, by this decision, in full force, he might, if he thought fit, there move to have the defendant’s body brought in (o receive sentence.

 Pie vs. Westly, Hob. 245

 Rex vs. Chandler, Salk. 378.

 Stat. 1783, c. 42, § 6.

 Ante vol. iii. 296