## Case No. 17,116.

### WALSH v. UNITED STATES.

[3 Woodb. & M. 341.] [1]

Circuit Court. D. Massachusetts. Oct. Term. 1847.

SMUGGLING—EVIDENCE—POSSESSION OF SMUGGLED GOODS—RECOVERY OF PENALTY.

1. Where a person had in his store and sold cigars, which he seemed to admit were known to him to have been smuggled, it is competent for the jury, unless he offer rebutting evidence, to infer from such admissions both that they had been landed without license from the collector, and that he knew it, and was keeping or storing them with such knowledge. This constitutes one offence under the act of congress of 1799 [1 Stat. 627], though it is another but distinct offence to land foreign merchandise without license, or to assist in doing it.

2. The remedy for the penalty incurred in such cases may be by information or debt.

[Cited in Stockwell v. U. S., Case No. 13,-466; s. c., on appeal, 13 Wall. (80 U. S.) 543; U. S. v. Maxwell, Case No. 15,750; Ex parte Wilson, 114 U. S. 425, 5 Sup. Ct. 939.]

3. If the information is filed by the district attorney, on behalf of the United States, though expressed to be for the benefit of the collector and all concerned, it will be sustained.

This was a writ of error, brought to reverse a judgment rendered in the district court for

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

Massachusetts in September, 1846. The original proceeding in which judgment was rendered was an information against [Richard] Walsh, for that he did "aid in removing, storing or otherwise securing" a certain quantity of cigars, which had been landed without special license, from a vessel at Boston, within this district, on the 9th of May, 1845, importing them from abroad, and which landing without license was known to said Walsh. [Case unreported.]

The objections insisted on at the trial, as well as now, are the following: 1. That an information does lie at all in a case of this kind. 2. That this information is informal and void. 3. That the rulings of the judge as to the evidence, which were excepted to and come up in the case by a regular bill of exceptions, were erroneous, because the judge instructed the jury that the acts of the defendant in removing or assisting to remove the articles, if it was within his knowledge that they had been landed improperly, need not be in connection with the landing itself.

Mr. Sohier, for plaintiff in error.

Mr. Rantoul, Dist. Atty., for the United States.

WOODBURY, Circuit Justice. The original information was here founded on a supposed violation of the 50th section of the act of congress, of March 2, 1799 (1 Stat. 665). That section punishes with a penalty of $400, and disability for seven years to hold any office of trust or profit under the United States, the unlading or delivery of any goods from a foreign port, "at any time without a permit from the collector or naval officer, if any, for such unlading or delivery." And it punishes in a like manner, "if any goods, &c., shall be unladen or delivered from any such ship or vessel, contrary to the direction aforesaid," any "person who shall knowingly be concerned or aiding therein, or in removing, storing or otherwise securing the said goods," &c.

The plaintiff in error was charged with the commission of the last named offence, of aiding to remove or store a certain quantity of cigars, which had been landed without any special permit, and this fact known to him at the time. The evidence offered to prove this, was his possession of cigars in his store, and selling some of them, which he appeared to concede had been smuggled. His counsel contended that this was not sufficient, unless he was shown to have aided or done something wrong in connection with the landing of them. But the district judge thought otherwise, and his construction of these provisions in the act of congress, we think, was correct. The act had two objects in view in these provisions: One was to punish the actual landing without a permit, and the other was to punish the securing or storing of the articles afterwards, so as to prevent the seizure of them for smuggling, and so as to help to make

the former violation of the law successful. But the offences may be distinct transactions, though the ultimate design in both punishments is to secure the faithful payment of duties or revenue to the government, and by making any assistance in evading that payment penal, whether it be by landing the property illegally, or storing it afterwards, with a knowledge of that previous illegality. All which the last clause requires to show penal guilt under it, would be secreting, or housing, or removing the articles to a safe place, knowing they have been irregularly landed. That of itself, properly considered, is an offence. It per se tends to countenance and assist the defrauding of the revenue. To be sure the landing of the goods without a permit is also an offence, but it is a separate and distinct one. So probably would be the removal of the goods with a view to aid in such landing, and in connection with it, it might be a branch or part of the other offence, viz., the illegal landing. It might make him a particeps criminis in the landing itself. But it is not the second offence described in the act of congress, as that consists, not in removing or storing to aid the improper landing, or in connection with it, but merely in "storing or receiving the goods," with a knowledge that an improper landing had already and beforehand taken place. This being of itself an unfaithfulness to duty, tending to defraud the revenue, ought to be and is a matter to be discountenanced by a severe penalty. If this plaintiff, in truth, had not, also, assisted in the landing, or if the cigars in this case were of domestic manufacture, and never really imported from abroad, he should have shown these facts in his defence, and not have allowed the case, unexplained, to go to the jury under admissions and statements, from which the inference was a just one, that the cigars which he was selling, and which had been stored on his premises, were smuggled, and this fact well known to himself, no less than to the purchasers of them from him.

We have thus gone over the merits of the case, as appearing at the trial, and on the bill of exceptions, and find them to be in favor of the government, and of the correctness of the instructions given to the jury. It remains to consider the two other objections, which apply more to the technical propriety of the form of proceeding adopted here, than to any defence on the merits.

It is contended first, as to this point, that the act of congress which we have been considering, virtually designates some civil action, like that of debt, for the recovery of the penalties incurred under it, and does not authorize an information. In the 89th section it is provided, "that all penalties accruing by any breach of this act, shall be sued for and recovered with costs of suit, in the name of the United States of America, in any court competent to try the same.' 1 Stat. 695. The expression "sued for and recovered," it is argued, applies to civil prosecutions, and not

those of a criminal character, like informations. 4 Bl. Comm. c. 23. And where one remedy is expressly given by the statute creating an offence, it is contended that no other exists of a common law character, because there is no offence in doing the act by the common law, and because "Expressio unius est exclusio alterius." Cro. Jac. 643; Rex v. Wright, 1 Burrows, 543; Wiley v. Yale, 1 Metc. [Mass.] 553; Rex v. Robinson, 2 Burrows, 803. All this, except the first position, may be sound law, and thus may be the case of State v. Mitchell, 1 Bay, 267, holding that where a constitution requires all public prosecutions to be in the name and by the authority of the state, a remedy by information, rather than an indictment by a grand jury, should be excluded, and especially, in case of a crime, be excluded with great propriety. But the first position is not correct, that "sued for" is an expression always applied to civil remedies. In the supplemental act of congress as to an embargo in 1809 (chapter 24, § 12 [2 Stat. 506]), further remedies were given expressly to recover penalties, as the original act of 1808, c. 8, § 6 [4 Bior. & D. Laws, 132; 2 Stat. 453], had conferred only the like remedies that existed in the collection law of 1799 now under consideration. This supplemental act provides that any penalty may be "sued for" and recovered by debt, or indictment, or information, any law, usage, &c., to the contrary. Now, if the argument from this be, that an information being given by this last act, it follows that it did not before exist, there would appear to be like ground for arguing that the remedy by debt being given by this last act, hence that remedy did not exist before.

Again, if "sued for" being an expression used in the first act, an inference is thence drawn that a civil remedy like debt, rather than a criminal one like an information, was intended, this argument is rebutted by the use of the same term "sued for" in the supplemental act, and there applied as well to information and indictment, as to debt. It may be that "a suit" usually means a civil remedy. U. S. v. Allen [Case No. 14,431]. But "sued for" is broader, and may mean prosecuted for in any legal form. An action of debt is doubtless good. Levy v. Burley [Id. 8,300]. And in the collection of a fine or penalty, given to an individual, though to be divided between himself and the United States, debt is the most usual remedy adopted. See case of Parsons v. Hunter [Id. 10,778]. An information, however, lies there sometimes. Ward v. Tyler (in South Carolina) 1 Nott & McC. 22. And it is the most common form of proceeding for penalties in connection with revenue in England. It is at times called "the king's action of debt." Levy v. Burley [supra]; U. S. v. Lyman [Case No. 15,647]. And though debt, also, will lie there (Cross v. U. S. [Id. 3,434]; U. S. v. Webber [Id. 16,656]; U. S. v. Mayo [Id. 15,755]; U. S. v. Lyman [supra]), and though debt may have been the most usual remedy adopted for the

recovery of a penalty under the collection law of 1799, yet several cases exist in the books where the remedy was by information (U. S. v. The Virgin [Case No. 16,625]; U. S. v. Hunter [Id. 15,428]; U. S. v. Brant [Id. 14,637]). The principles applicable to this subject seem to favor this last remedy.

The breach of the law here is not a crime, in one sense, so as to require an indictment, or any punishment, either by fine or imprisonment in the discretion of the court, nor does it look like a debt by means of money had, goods sold or services performed, so as peculiarly to require a civil remedy. But it is rather one of those mixed transactions, one of those statutory liabilities created for public reasons, and to be sued for on public account in part, and in the name of the United States, rather than of any individual, and hence an information would seem to be the most appropriate, as that is instituted officially by the public attorney, and not like an indictment found by a grand jury, and not like an action of debt, brought by any attorney whom the prosecutor pleases to employ.

A further objection is urged, that this information is in behalf of the United States and Marcus Morton, the collector of the port of Boston, whereas it ought, by the statute, to have been in the name of the United States alone. But this is in some degree a misapprehension concerning the facts. This information is in the name of the United States, and probably must be. 1 McCord, 35, 52. Yet it is in behalf, not only of the United States, but Marcus Morton, and any other person interested. That is the fair and legal intendment of the recital, distributing the words as the sense requires. See Jewett v. Cunard [Case No. 7,310]. And there is no impropriety in saying that the information, though in the name of the United States, was in behalf of all concerned in the question. Perhaps it must state this. Com. v. Messenger, 4 Mass. 462. The common actions qui tam for penalties, are usually in the name of a complainant or informer, but still brought in behalf of others, as well as himself, and are so stated to be in the proceedings, when others are to receive a portion of the penalty. But a suit may be sustained in the name of all entitled to portions of the penalty. Bradley v. Baldwin, 5 Conn. 288. The form of expression adopted here, probably arose from what is provided in the 89th section, where collectors are enjoined to cause suits to be instituted for penalties under the act, without delay, and to receive the money collected, and distribute the same to those entitled. 1 Stat. 695. This furnishes another reason, undoubtedly, why the information is in the usual form, recited to be in part on the behalf of the collector. If there was a real error in this description, courts are liberal in allowing amendments even in informations. 4 Durn. & E. [Term R.] 457; 4 Burrows, 2527; 3 Anstr. 714; 5 Mees. & W. 372; The Emily & The Caroline, 9 Wheat. [22 U. S.] 381; and The Merino [Id. 391]. In this respect, and for good reasons, informations are unlike indictments, because they are drawn up by the attorney for the United States, who is in chancery to amend them to conform to the truth, as in any civil action, and are not found by grand juries dispersed over the whole county, and not easily got together to make amendments, if they could. Chirac v. Chirac, 1 Wheat. [14 U. S.] 261. So, even after a writ of error, amendments in new form are often allowed in the original proceedings. See U. S. v. Jarvis [Case No. 15,469]. But in our view the information can be maintained as it is, and therefore the judgment must be affirmed.