IN THE

# SUPREME JUDICIAL COURT,

IN THE

## COUNTY OF FRANKLIN,

ARGUED MAY TERM, 1848.

---

SIMON W. PUTNAM *versus* ANDREW M. OLIVER.

In *scire facias* against a supposed trustee, and it would seem in all actions commenced originally before a justice of the peace, where the pleadings are closed by a demurrer and joinder, and the action is carried by appeal to the District Court, *no appeal* lies from the decision of that Court, upon the same pleadings, to the Supreme Judicial Court.

"STATE OF MAINE.

"FRANKLIN ss. — At a justice court held before Charles Pike, Esq. one of the justices of the peace within and for said county, at my office in Kingfield in said county, on the 8th day of April, A. D. 1846, Simon W. Putnam, late of New Vineyard, county of Franklin, against Andrew M. Oliver of Freeman, in the county of Franklin, in *scire facias* against said Oliver as trustee of John Reed, as per writ on file with said justice, will appear.

" The said action was entered before me, the said justice, on the 28th day of March, 1846, by John H. Webster, Esq. Att'y to plaintiff, at which time the said Oliver appeared by W. S.

---

SEE Stat. 1848, c. 49, " relating to the duties of the Reporter of the decisions of the Supreme Judicial Court."

Marshall, Esq. his att'y, and moves the Court for leave to make a new disclosure, which motion the plaintiff resisted, and after hearing all the matters and things and arguments offered and urged by the parties, I have determined to deny the said motion, and thereupon the said Oliver comes into Court and defends, &c., where, &c., and for cause why said plaintiff should not have judgment rendered against him for any goods, effects or credits in his hands and possession as of his own proper goods and chattels, and execution issue against him accordingly in favor of said plaintiff for the amount due him from the said John Reed, says, that he had not at the time of the service of the plaintiff's writ, in the original action aforesaid, against said Reed, on him, any goods, effects or credits in his hands and possession, belonging to said Reed, and has not had any since that time, nor has any at the present time, and submits himself to examination on oath touching the same, and also submits himself to the following interrogatories, and tenders to this Hon. Court, the answers to the same, duly sworn to according to law, and prays he may be discharged, and for his costs, and this he is ready to verify.

"Andrew M. Oliver."

"Unless I shall be adjudged trustee from the following abstract: — Reed and myself logged together in the winter of 1842, without any permission from the proprietors; we were to share equally in expenses and profits only; if no stumpage was called for by any one, before the logs arrived at the Forks near Noah Staples', I was to relinquish to him my right to a piece of land called the Johnson lot, of which I once had a bond which was forfeited or run out. The stumpage was called for before the logs left the landing, by Joshua Gazlin, who said he had bought the soil of Col. Herrick, who had reserved the timber and left it in his care. I have expended money for labor and materials and supplies, more than Reed, about $147, and by said agreement I was to have so many of said logs as would pay the extra advances. Stewart, the surveyor of the logs, had told me that Ira Crocker had called on him to know how much he had scaled for us,

and said he was going in to take the mark of the logs, and should seize them. ' The said Oliver further says, he does not nor never did owe the said Reed a cent, and voluntarily submits himself to interrogations upon oath. The amount of lumber cut, by the surveyor's bills, was 141,142 feet. A copy of the aforementioned agreement is hereunto annexed.

"Andrew M. Oliver."

" FRANKLIN, ss. — Sworn to before me,

"Charles Pike, Justice of the Peace."

Copy of said agreement.

"Kingfield, January 1st, 1842.

"Articles of agreement entered into between Mr. Andrew M. Oliver and John Reed, both of Kingfield. The said Oliver and Reed agree to haul logs on Dead River, into the south branch, the present winter, and further agree that each one shall pay an equal share of the expenses for hauling said logs. If either one fails of paying one half of the expenses, the other shall take the amount of the failure from the logs ; now the said Oliver on his part, further agrees that if the logs run down the river to the Forks, at Noah Staples', there is no call from any one for stumpage until they arrive at the place in the river above mentioned, he, the said Oliver, is to sell and convey to said Reed, all the right, title and interest he has by bond of a certain lot or parcel of land, called the Johnson place, situated in said Kingfield ; the conveyance of the right in said land is in consideration for the privilege said Oliver received by running in with said Reed to log. If there is any call for stumpage before the logs arrive at the Forks above mentioned, then the said Oliver is not to convey his right in the land to said Reed.        (Signed.)            "Andrew M. Oliver,

"John Reed.

"Witness, John B. Wellcome."

"And the said Putnam, as to the said plea of the said Oliver, by him above pleaded, says, that the same and the matter therein contained, in manner and form as the same are above pleaded and set forth, are not sufficient in law to bar and preclude him, the said Putnam, from having and maintaining his

aforesaid action thereof against him, the said Oliver, and that he, the said Putnam, is not bound by the law of the land to answer the same, and that he, the said Putnam, is ready to verify. Wherefore for want of a sufficient plea in this behalf, he, the said Putnam, prays judgment and execution by reason of said Oliver not exposing to be taken on execution issued on original judgment, the goods, effects and credits of the principal debtor, in his, said Oliver's hands, and possession to be adjudged unto him, &c.

" And the said Putnam according to the form of the statute in such cases made and provided, states and shows unto the Court here, the following causes of demurrer to the said plea, that is to say, that the said plea is a special plea in bar, and gives no color or right, or title to the plaintiff.

" 2d. The plea is not adapted to the nature or form of the action, nor conformable to the count.

" 3d. The plea does not answer the whole declaration or count, although it assumes so to do.

" 4th. The plea does not answer or deny a single allegation, in the plaintiff's writ or declaration.

" 5th. The plea is special but does not confess or admit the facts alleged in the plaintiff's declaration, and justify or excuse them.

" 6th. The plea is not single, but double, and is double in this, that it alleges that defendant had not at the time of the service of the original writ upon him, goods, effects and credits of the principal defendant, in his hands, nor has he had any since, nor has he any now, and he adds an agreement of his dealings with the principal defendant, which by reference, becomes a part of the plea.

" 7th. The plea is by way of rehearsal, reasoning and argument, and not direct and positive, as it alleges facts, from which the conclusion is to be drawn, that at the time of the service of plaintiff's original writ upon him, he had not goods, effects or credits of principal defendant, in his hands and possession.

" 8th. The plea is not so pleaded as to be triable, as the facts are complicated with law.

" 9th. The plea alleges matters only which existed at the time of the original judgment, and which were pleaded on the original action.

" 10th. The plea has not the proper commencement as it does not say that the plaintiff ought not to have and maintain said action against him, the said defendant.

" 11th. The plea has not the proper conclusion.

" 12th. The defendant in said plea only appears to verify his prayer of judgment and not the facts alleged in his plea.

" 13th. The plea is an attempt to do indirectly, what the Court have denied to this defendant's direct motion. And also the said plea is in other respects uncertain, informal and insufficient, &c.          By his attorney,

" John H. Webster."

" And the said Oliver says that his plea above pleaded and the matter therein contained, in manner and form as the same above pleaded and set forth, are sufficient in law, to bar and preclude the said Putnam from having and maintaining his aforesaid action thereof against him, the said Oliver, and that he, the said Oliver, is ready to verify and prove the same, when and where and in such manner as the said Court here shall direct and award thereof, inasmuch as the said Putnam has not answered the said plea, nor hitherto in any manner denied the same, the said Oliver prays judgment, and that said Putnam may be barred from having or maintaining his aforesaid action thereof against him, the said Oliver.

" By his attorney, Wm. S. Marshall."

" Which action having been then continued to the present time and the parties having before me the above plea, demurrer and joinder, being fully heard, by me, the said justice, I adjudge that the plea of said Oliver as above pleaded, and the matter therein contained in manner and form as the same are above pleaded and set forth, are not sufficient in law to bar and preclude the said Putnam from. having and maintaining his aforesaid action thereof against the said Oliver.

" It is therefore considered by me, the said justice, that the said Putnam do receive of the said Oliver the sum of seven-

teen dollars and seventy-two cents damages, and the sum of $6,59, costs of suit.

"From which judgment the said defendant appealed to the District Court, for the western district, next to be held at Farmington, within and for said county, on the last Monday of September next, which appeal is allowed by me, the said justice.

"Given under my hand the day and year first above written.

"Charles Pike, Justice of the Peace.

"A true copy, Attest, Charles Pike, Justice of the Peace.

"Fees for copy of Judgment, $2,00.

"A true copy, attest, A. B. Caswell, Clerk."

Declaration, inserted in a common blank writ of attachment.

"Whereas Simon W. Putnam, late of New Vineyard, county of Franklin, at Kingfield, in said county, before Chas. Pike, Esq. one of the justices of the peace within and for the county of Franklin, on the 27th day of June, A. D. 1842, by consideration of said justice, recovered judgment for the sum of seventeen dollars seventy-two cents, damages, and costs of suit taxed at $6,59, against the goods and effects of John Reed, of Dead River, in the hands and possession of Andrew M. Oliver of said Kingfield, as agent and trustee of said Reed, and whereas the said Putnam afterwards at said Kingfield, on the 9th day of July in the year 1842, purchased out of the office of our said justice, one writ of execution upon that judgment in due form of law, returnable to our said justice, at the end of three months next coming, directed to the sheriff of the county of Franklin, or his deputy, or to any constable of either of the towns of said county, commanding them to serve, execute and return the same according to the precept thereof. And whereas the said writ of execution was afterwards at said Kingfield, on the same day delivered to A. C. Thompson, then one of our deputy sheriffs for aid county of Franklin, who thereafterwards on the same day, and within thirty days of the rendition of said judgment, required said Oliver to disclose and expose and subject the goods, effects and credits of the said Reed, in his hands to be taken on execution for the satisfaction of said judgment, which the said Oliver

then and there refused to do; whereupon said Thompson returned said execution to the office of said justice unsatisfied; and thereafterwards, to wit, on the 28th day of June, 1844, said Putnam sued out from the office of said justice, an alias execution upon that judgment in due form of law, returnable to our said justice at the end of three months next coming, directed to the sheriff of the county of Franklin, or to his deputy or to any constable of either of the towns of said county, commanding them to serve said execution and return the same according to the precept thereof.

"And whereas the said execution was afterwards at said Kingfield, on the 20th day of July, in the year 1844, delivered to said Thompson, then a deputy sheriff of said county of Franklin, who thereafterwards on the same day, requested said Oliver to discover, expose and subject the goods, effects and credits of said Reed, in his hands, to be taken on execution, for the satisfaction of said judgment, which the said Oliver then and there refused to do. Whereupon the said Thompson returned said execution into the office of our said justice, and returned thereon that he had made diligent search after the goods, chattels, rights and credits of said Reed, whereon to levy this execution, and could not find in his possession, nor in the hands of the said Oliver, nor could said Oliver show, or disclose any to him, whereon to levy said execution, by means of all which the said Putnam is in danger of losing all benefit of said judgment, so recovered as aforesaid, and having supplicated us to grant a remedy in that behalf, willing, therefore, that justice should be done to all our citizens, in the name of the State of Maine, you are required to attach, &c., to show cause, if any he have, why judgment should not be entered up against him for said sums, as of his own proper goods."

The foregoing is a copy of all the papers in the case received by the Reporter. It appears from the opinion of the Court and the arguments of counsel, that the above was entered in the District Court, judgment there rendered for the plaintiff, and an appeal there claimed and allowed, and entered by the defendant in this Court, as an appealed case.

This case was argued in writing.

*John H. Webster,* for the plaintiff.

This is an action of *scire facias* against the defendant to recover judgment against defendant's own proper goods, &c. for the amount of a judgment obtained by the plaintiff against one John Reed, and also against the goods, &c. of said Reed in the hands and possession of the present defendant. To this *scire facias,* he pleads the plea on file, to which plea the plaintiff demurs specially. And some of the causes of demurrer I propose now to consider.

The 1st cause of demurrer I pass over, by simply referring the Court to 1 Chitty's Pleading, 500 ; as also the 2d by quoting *ib.* 507.

The 3d and 4th causes are, that the plea does not answer or deny all or a single allegation, in the plaintiff's writ and declaration.

The declaration alleges a judgment to have been obtained against Reed's goods, &c. in the hands of this defendant, that execution duly issued, and that the proper demand was made, by a deputy sheriff, in due season upon this defendant. The defendant's plea alleges matters relative to the dealings between this defendant and John Reed prior to the former judgment, but does not deny the matters alleged by the plaintiff, nor admit and avoid them. It in fact says nothing about the allegations, although it professes to answer them all. The law requires that the plea should answer all the material allegations. 1 Chitty Plead. 509; Gould's Plead. c. 6, § 98 ; *Underwood* v. *Campbell,* 13 Wend. 78.

As to the 5th cause of demurrer, I barely refer the Court to 1 Chitty, 511.

We allege that the plea is double, as stated in cause 6th and refer to 1 Chitty, 511.

As to the 7th cause of demurrer, the Court are referred to 1 Chitty, 518 ; and as to the 8th, refer to *ib.* 519.

The 9th cause of demurrer is, that the plea alleges matters only which existed at the time of original judgment and which were pleaded to the original action.

The law is clear that nothing can be plead in bar to a *scire facias*, which existed at the time of the original judgment, and which were pleaded or pleadable in the original action. 1 Chitty, 354 and 481 ; Com. Dig. Plead. 2 W. 39 ; 3 C. 10, 11, 12, 15 ; *Thatcher* v. *Gammon*, 12 Mass. R. 268 ; *Flint* v. *Shelden*, 13 Mass. R. 443.

This defect is a matter of substance and available upon a general demurrer, and the plea is fatally defective, whether it allege matters that were actually pleaded, or were only pleadable to the original action.

If the magistrate decided wrongfully on the disclosure in this case, provided, there was one in this case, the defendant should have appealed to the District Court, and then have had an adjudication of the District Court upon his disclosure, and it is not competent for him to lay by and allow a judgment to be rendered against him, and then try the matter over again in a suit founded on that judgment. It is the every day practice to appeal from the decision of a magistrate upon trustee disclosure, and to except to the decision of the District Court upon such disclosure, which affords the trustee ample protection of his rights.

The decision of the magistrate upon the disclosure, is as much a judgment as any other judgment rendered by him, and governed by the same principles.

Our Revised Statute differs from the Massachusetts statute, in force there, until their statutes were revised. Our Revised Statute c. 119, § 31–2–3–4, makes the decision of the Court a judgment, the same as any other adjudication by him made in the case. But if it be such a judgment we say it is governed by the same principles precisely. And the authorities are clear that nothing can be plead to a *scire facias* that existed at the time of the trial had in the action, in which the judgment was rendered, upon which the *scire facias* is sued out.

As to the 10th and 11th cause of demurrer, the Court are referred to 1 Chitty's Pleading, 533 and '7 ; Gould's Pleading, c. 6, § 120.

As to the 12th cause, to the plea itself.

13th cause.  The plea does attempt to accomplish indirectly what the Court deny to the defendant's direct motion, which we say it is not allowed him to do.  The Court denied to him the privilege of making a new disclosure, upon argument had, for good and sufficient reason, and if the defendant has any remedy from that adjudication (which is very uncertain) it was by an appeal from that decision, and by pleading over after that decision, he waived the motion, and it is now too late for him to have that decision corrected, either by appeal or plea. But we say the defendant cannot as matter of right, when sued on *scire facias* founded on a former judgment against the goods, effects, &c. of a third person in his hands and possession, make a new disclosure.  It is in the discretion of the Court to allow or require a new disclosure as they may think it right.  Ch. 119, sec. 79, Rev. Stat. provides that " the Court may permit or require him to be examined anew in the suit," plainly indicating that it did not intend to give to either party a right to a new disclosure otherwise than in the discretion of the Court.  The language is the same as that used with reference to amendments, which has always been considered as placing the matter of amendments in the discretion of the Court.  If then the matter of making a new disclosure is a matter in the discretion of the Court, a decision of Court once made is final, and not revisable either in the same form or any other, either in the same Court or any other.  This argument is not now addressed to the Court, because it is supposed that this question now is, or hereafter can be open, but to show the appropriateness of the 13th cause of demurrer, for if the former decision of the Court is final, the attempt to procure the reversal of that decision indirectly, or the attempt to do indirectly what the Court have refused certainly, will not be sustained, and the plea on that account must be bad.

*W. S. Marshall*, for the defendant.

It appears from the papers in this case that the plaintiff commenced an action against one John Reed, in which the defendant was summoned as the trustee of Reed, which ac-

tion was returnable before Charles Pike, Esq. on the 31st of May, 1842, at which time the said Oliver appeared and made his disclosure in writing, and was adjudged trustee of the said Reed by the said justice, though it is obvious from the disclosure he cannot be held as trustee of the said Reed and ought to have been discharged, and execution was awarded to the plaintiff against the goods and effects of the said Reed in the hands and possession of the said Oliver, the present defendant.

The present action is brought to obtain execution against the defendant, for the amount of the judgment recovered by the plaintiff against the said Reed, and it appears that the writ was returnable on the 28th of March, 1846, and before the said Charles Pike, Esq. and judgment rendered on the 18th of April, 1846. It appears from the record of said Pike, that the defendant appeared on the 28th of March, 1846, and moved to be allowed to make a new disclosure, which was denied by the said justice, and the record of the said justice also shows the further proceedings before him.

The defendant did then proceed to make, and did *make* in writing a *new disclosure,* in the form of a *plea* or brief statement, which is set forth in the record, and showing cause sufficient why judgment should *not* be rendered against him. *Special pleas* or pleadings are inadmissible before justices of the peace. Rev. St. c. 116, § 30.

What is called the defendant's special plea in bar, is nothing more than a *new disclosure* showing why he should not be adjudged trustee. The plaintiff had no right to put in what he called a demurrer, to what he calls the defendant's plea. The justice had no right to allow it to be done. It was superfluous. The judgment that the plea of the defendant, as it is called, was adjudged bad, and therefore, judgment for debt and cost against the defendant, is nothing more or less substantially, then that the defendant was adjudged trustee by the justice, on the facts stated by the defendant in his statement, to which the plaintiff undertook to demur, with a great array of causes assigned, and from this judgment the appeal was taken.

The Court will not, I think, allow the informalities of the proceedings before the magi te, or on merely *technical* objection, to deprive the defendant of the benefit of good reasons why he should not be adjudged trustee of Reed, &c. when these reasons appear in the case substantially, though perhaps not in the most approved form.

It is contended, 1st. That special pleas and pleadings are not allowable before a justice of the peace, and all that resembles special pleading in this case is mere surplusage. Rev. St. c. 116, § 30.

2. That the defendant's statement before the justice was substantially a new disclosure, which he had a right to make under § 79 of c. 119, Rev. St. or a reiteration of his disclosure, in the original action.

3d. That the whole matter by the appeal is open in this Court, and this Court is no way restricted by the proceedings before the justice.

4th. That the real question is, whether the defendant is chargeable as trustee of Reed. From what appears in the record of the justice, *he is not*, and this *has been already decided* by this Court, as by the copy of the disclosure hereunto annexed, marked B, in the case of *Solomon Stanley & al.* v. *John Reed*, and this defendant as trustee, Sept. Term, 1842, appears.

5th. That this Court has power to allow and receive a new disclosure and to render such judgment as law and justice require upon the whole matter. Rev. St. c. 119 § 79; 21 Pick. 109; 1 Metc. 426. And this should have been done in the District Court.

The case shows that the defendant did appear and did disclose in the original action, and his disclosure there made and hereunto annexed, marked A, shows that he was not trustee of Reed, such being the fact, that he had been examined in the original suit; if he had been defaulted judgment must have been rendered upon the facts stated in that disclosure; Rev. St. c. 119, § 77, and if rendered according to the law of these *facts it would have discharged the defendant.*

But the facts stated in the defendant's plea, if so it might be called, constitute a good defence to the plaintiff's having judgment against the defendant. The original suit and the *scire facias* under the trustee process constitute one connected and continued course of proceedings.

The original judgment does nothing more than declare the trustee liable on his answer. It fixes no amount *for which he is liable,* and the decision of the justice on the defendant's disclosure in the original action, that he was trustee, was merely an interlocutory decision not definitively binding on trustee. 21 Pick. 111, 113. In this suit the defendant is called in to show cause why the plaintiff should not have execution against him for the amount of his judgment against Reed, and the defendant says he had no goods, &c., of the plaintiff. This, so far as the same is properly set forth by the defendant, the plaintiff admits by his *demurrer.*

The whole proceedings in the trustee process are regulated by statute, there are not in the books any prescribed forms of pleadings in this process, and causes of demurrer assigned by the learned counsel of the plaintiff to the defendant's plea, do not and cannot apply to proceedings in the trustee process. The 79th § of the Rev. S . authorizes the defendant to prove any matter proper for his defence on the *scire facias;* this the defendant by his plea offered to do and was refused by the justice, because the plaintiff, admitting the facts, objected to the form, and the same section provides that the Court may render such judgment as law and *justice require upon the whole matter appearing on such examination and trial.*

Did the magistrate render such a judgment? Did the District Court by affirming the judgment of the magistrate? It is not even pretended that the defendant had any goods, &c. of Reed's in his possession. Yet the judgment from which this appeal is taken, is, that the paintiff recover of the defendant the *full amount of his judgment against Reed and all costs.*

If the judgment had been, that defendant was chargeable only for nominal amount and costs of *scire facias,* there would have been less appearance of gross injustice.

*Webster* replied.

The opinion of the Court, SHEPLEY J. taking no part in the decision, was drawn up by

WHITMAN C. J. — This action, by the docket, appears to have been brought into this Court by appeal from the decision of the District Court. It is *scire facias* against a supposed trustee; and was originated before a justice of the peace, upon preliminary proceedings had in a court before him. Before the justice the defendant made a plea, to which the plaintiff thought proper to demur; and the defendant joined in demurrer. The justice adjudged the plea to be bad; and the defendant thereupon appealed to the District Court. The statute c. 116, $ 9, authorized him to do so; but in reference to any further appeal this statute is silent; and appeals cannot be made from one tribunal to another, but by express provision of law.

It must have been supposed by the parties in this case, however, that c. 97, $ 13, authorized a further appeal, in cases of this description, to this Court. Was such a supposition well founded? That act was made for the purpose of defining, with precision, the powers to be exercised by the District Court, as c. 96, in juxtaposition with it, was intended to prescribe with competent precision, the powers to be exercised by this Court; so that the jurisdiction between the two courts might not conflict with each other. The right to an appeal from a justice's court is nowhere alluded to in c. 97. When the attention of the Legislature was occupied in fixing the limits to the judicial powers of this Court, and the District Court respectively, it may well be believed that they did not take into view an appeal to be subsequently authorized in an act authorizing justices to take cognizance of a certain description of actions of minor importance.

When the act conferred jurisdiction in such cases upon justices of the peace, it is obvious, that it was done with a view to prevent vexatious litigation, in reference to actions in which the matter involved was far short in amount of the expense of a protracted lawsuit. An appeal, however, was specially authorized in such cases to the District Court. No

express provision was made for any further appeal therein. Could it have been intended, after giving justices exclusive original jurisdiction in such cases, that an appeal should first be allowed from their decisions to the District Court; and then from that court to this?

If the case at bar is appealable into this Court there is nothing to prevent every cause, instituted before a justice, from being brought into this Court by a demurrer, which the parties may agree to waive, when it shall have been carried through the District Court to this Court; thus making an affair of little moment become important by the accumulation of costs. The policy of the law is surely adverse to such a proceeding. And it has been decided by this Court, in *New Gloucester* v. *Danville*, 25 Maine R. 492, that $ 13, c. 97, had reference merely to actions originated in the District Court.

In *Seiders* v. *Creamer*, 22 Maine R. 558, we held that a cause originated before a justice of the peace, and appealed to the District Court and there tried, was not appealable. The case at bar, however, comes before us upon a demurrer and joinder thereon, before the justice ; and seems to be within the literal import of the language of the statute, c. 97, $ 13. But sections 15 and 16 of the same statute, seem clearly to show that such was not the intention of the Legislature ; and that in providing for appeals from the District Court, it had in view only appeals from that Court in cases originally cognizable there. Those sections provide, that any party appealing from that court, in any action except actions of trespass on land, replevin against some town, writs of entry and dower, demurrers filed by consent of parties, with an agreement to waive the same, or from judgments on agreed statements of facts, if he be the plaintiff, and shall not recover more than two hundred dollars debt or damage, he shall not recover any costs, after such appeal ; but the defendant shall recover his costs on such appeal. And if the defendant appeals in such cases, and the damage shall not be reduced, he is to incur double costs ; unless the District Court shall certify that there was reasonble cause for appealing.

Putnam *v.* Oliver.

The case at bar was not one in which the parties had agreed on a demurrer and joinder, to be afterwards waived ; and it is not such a case as could have been in the contemplation of the Legislature to be affected in its results as to costs. And the three sections (13, 15, 16) clearly show that no action could be affected, unless it were one of those specifically exempted, without being of the description liable to be affected with the provision as to costs. It is preposterous to suppose that the provision as to costs could apply to an action like the one at bar.

A similar question seems to have occurred in Massachusetts, both before and since our separation from that State. In *Commonwealth* v. *Messenger*, 4 Mass. R. 462, which was a criminal prosecution, an appeal had been taken from the decision of a justice of the peace to the Court of Common Pleas, and from the latter to the Supreme Judicial Court, where a second verdict was returned against the defendant. The right to an appeal from the Common Pleas Court was given by statute in general terms, as in our own statute from the District Court. But the Court held that no appeal lay in such case from the Court of Common Pleas, although a trial had been had in the Supreme Judicial Court, and a verdict of guilty had been returned, and dismissed the appeal. Chief Justice Parsons remarked in that case, that " a right to appeal is a privilege granted to an aggrieved party, which does not involve in it a right further to appeal from the Court to which he has applied for relief from an inferior jurisdiction." The case at bar falls precisely within the scope of this position.

The next case that occurred in Massachusetts was an action of assumpsit, (*Belcher* v. *Ward & al.* 5 Pick. 278,) in which a plea in abatement was filed, and which was demurred to, and upon judgment thereon the defendant appealed to the Court of Common Pleas ; and upon judgment there the plaintiff appealed to the Supreme Judicial Court ; from which the appeal was dismissed. Another case occurred there (*Adams* v. *Adams*, 15 Pick. 177,) which was an action of replevin, which was first carried by appeal from a justice court to the

Court of Common Pleas, and from thence by appeal to the Supreme Judicial Court, where a trial was had, and judgment rendered, which was reversed on error, because no appeal lay from the Court of Common Pleas. The reasoning of the Chief Justice in *Commonwealth* v. *Messenger*, doubtless was considered decisive in the two latter cases.

It appears to me, therefore, that reasoning, a fair construction of our statute, c. 97, § 13, 15, and 16, and authority require that this appeal should be dismissed.